Merle S. MILLER and Marjorie Lee Anderson, as Executors of the Estate of Esther E. Miller, Plaintiffs,

v.

UNITED STATES of America, Defendant.

No. 86–3245.

United States District Court, C.D. Illinois, Springfield Division.

March 9, 1988.

David J. Duez, Robert M. Bellatti, Springfield, Ill., for plaintiffs.

Richard N. Cox, Asst. U.S. Atty., Springfield, Ill., Seth G. Heald, Trial Atty., Tax Div. U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION

RICHARD MILLS, District Judge:

A tax case.

The family farm.

The issue presented here is one of first impression and one on which little authority exists to guide our decision.

In this tax matter, we are asked to decide the validity of Treasury Regulation § 20.2032A–8(a)(2), which concerns the special use valuation election under Internal Revenue Code of 1986 § 2032A.

This cause is before the Court on the parties' cross motions for summary judgment which is appropriate where there is no genuine issue of material fact, and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56. As the parties have stipulated to the facts involved, this is such a case.

For the following reasons, we believe the Plaintiffs are correct and the Government is in error.

### I

The agreed facts are these. Plaintiffs, Merle S. Miller and Marjorie Lee Anderson, are the duly appointed and currently acting executors of the will of their deceased

mother, Esther E. Miller. The decedent died a resident of Clinton, Illinois, on August 14, 1983. On November 6, 1985, the Internal Revenue Service (IRS) issued a statutory notice of deficiency determining that additional estate taxes were due from the estate in the amount of $19,365.98. In addition to having paid the undisputed federal estate tax, Plaintiffs have paid this additional tax determined by the IRS in its notice of deficiency. Plaintiffs subsequently filed a timely claim for refund of taxes paid in the amount of $17,795.60 plus interest. The IRS has neither allowed nor disallowed Plaintiffs' claim for refund in whole or in part.

The issue disputed by the parties is whether Plaintiffs made a valid special use valuation election on a tract of farmland located in DeWitt County, Illinois. The Government agrees that the subject farmland qualifies for special use valuation in all respects and that Plaintiffs' election of special use valuation is complete and effective except for the question whether a special use valuation election can be made with respect to real estate which has an adjusted value which is less than 25% of the adjusted value of the gross estate as defined by Internal Revenue Code § 2032A(b)(3)(A). The special use valuation election by Plaintiffs described herein was an election with respect to real estate having an adjusted value of 23.83% of the adjusted value of the gross estate. Although other real estate in the decedent's estate qualified for special use valuation, Plaintiffs sought to elect special use valuation only with respect to the farmland in DeWitt County described above.

## II

Under § 2032A of the Code, certain farm property can be "specially valued" whereby, for estate tax purposes, the farmland is valued at its actual use value as opposed to its highest or best use value. The Seventh Circuit has described the purpose of this section as follows:

The purpose of § 2032A was to encourage the continued operation of family farms and other small family businesses by permitting real property used for the farm or business to be valued upon its present use, rather than upon its highest and best use. Thus, § 2032A relieves taxpayers from having to sell an eligible family farm or business when the income from its present use is insufficient to pay the tax calculated upon its highest and best use.

*Schuneman v. United States,* 783 F.2d 694, 697 (7th Cir.1986).

Under subparagraph (b)(1)(B) of Code § 2032A, a decedent's real estate can qualify to be "specially valued" only if: "25 percent or more of the adjusted value of the gross estate consists of the adjusted value of real property which meets the requirements of subparagraphs (A)(ii) and (C)...." 26 U.S.C. § 2032A(b)(1)(B). Section 2032A does not apply automatically. Rather, an estate must elect to value property under this section on the estate tax return. 26 U.S.C. § 2032A(a)(1)(B). Section 2032A(d)(1) states: "Such election shall be made in such manner as the Secretary shall by regulations prescribe." In furtherance of this mandate, the Secretary promulgated the following regulation: "An election under section 2032A need not include all real property included in an estate which is eligible for special use valuation, but sufficient property to satisfy the threshold requirements of section 2032A(b)(1)(B) must be specially valued under the election." [1] 26 C.F.R. § 20.2032A-8(a)(2).

In other words, Code § 2032A(b)(1)(B) provides that for any property to qualify for special use valuation, at least 25% of the adjusted value of the decedent's gross estate must meet certain requirements. Regulation § 20.2032A-8(a)(2) provides that, while an estate need not elect special use valuation with respect to all qualifying property, the estate must elect special use

---

1. The interpretation of this language which has been adopted by the IRS is that the regulation requires that election be made on real property having an adjusted value of at least 25% of the adjusted value of the gross estate. *See* Private Letter Rulings # 8046012 & # 8042009.

valuation with respect to at least 25% of the adjusted value of the gross estate.

In this case, it is undisputed that the estate met the test of Code § 2032A(b)(1)(B), and it is also undisputed that the estate failed to meet the requirement of regulation § 20.2032A–8(a)(2). Thus, while the estate contained sufficient qualifying real property to satisfy the 25% requirement of the Code, the estate sought to elect special use valuation only with respect to a portion of that qualifying property, which portion amounted to 23.83% of the adjusted value of the gross estate. Hence, the estate's election failed by 1.17% to meet the 25% requirement of the regulations.

Plaintiffs argue that their election of only 23.83% was proper because the Code does not require a 25% election; thus, the treasury regulation at issue is invalid as an attempt to add an additional requirement to qualify for special use valuation which is not found in the underlying statute or its legislative history. On the other hand, the Government argues that the disputed regulation was promulgated pursuant to the Commissioner's express statutory authority under Code § 2032A(d)(1), that it is a "legislative regulation," and that the rule of deference to the regulations, *see Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981), requires that this Court find the regulation to be valid.

We agree with Plaintiffs.

### III

■ The Supreme Court has stated: "Treasury Regulations 'must be sustained unless unreasonable and plainly inconsistent with the revenue statutes.'" *Commissioner v. Portland Cement Co. of Utah*, 450 U.S. 156, 169, 101 S.Ct. 1037, 1045, 67 L.Ed.2d 140 (1981) (quoting *Commissioner v. South Texas Lumber Co.*, 333 U.S. 496, 501, 68 S.Ct. 695, 698, 92 L.Ed. 831 (1948)). However, where the regulation is promulgated under the "general authority to 'prescribe all needful rules and regulations[,]' 26 U.S.C. § 7805(a) ... 'we owe the interpretation less deference than a regulation

issued under a specific grant of authority to define a statutory term or prescribe a method of executing a statutory provision.'" *United States v. Vogel Fertilizer Co.*, 455 U.S. 16, 24, 102 S.Ct. 821, 827, 70 L.Ed.2d 792 (1982) (quoting *Rowan Cos. v. United States*, 452 U.S. 247, 253, 101 S.Ct. 2288, 2292, 68 L.Ed.2d 814 (1981)). Thus, we must first decide whether the disputed regulation is a *legislative* one (promulgated pursuant to a specific grant of authority) or an *interpretive* one (promulgated pursuant to the general rule making power of § 7805(a)). Naturally, Plaintiffs argue that this is an interpretive regulation, whereas the Government argues it is legislative.

The Government contends that Regulation § 20.2032A–8(a)(2) was promulgated pursuant to the authority granted at 26 U.S.C. § 2032A(d)(1) which states: "Such [special use valuation] election shall be made *in such manner* as the Secretary shall by regulations prescribe." (Emphasis added.) As such, the Government argues that the pertinent portion of the disputed regulation is a legislative regulation rather than an interpretive regulation. In opposing this view, Plaintiffs argue that the disputed regulation could not have been validly promulgated under § 2032A(d)(1) because the regulation oversteps the authority granted in § 2032A(d)(1), and, therefore, must have been promulgated under the general rule making power of § 7805(a)—making it an interpretive regulation. Plaintiffs assert that the authority to promulgate regulations granted in Code § 2032A(d)(1) pertains only to regulations governing the *procedure* by which an election should be made and does not authorize the Secretary to add substantive requirements to the election qualifications prescribed in Code § 2032A. The Government argues that the regulation simply "requires estates desiring to elect special use valuation to make the election with respect to a specified minimum amount of property. Clearly, this is a regulation 'as to the manner of making' the election."

We disagree with the Government. Obviously, the regulation adds a substantive

requirement to the option of making an election. It is not merely procedural. Procedural regulations deal with *how* a taxpayer is to proceed in making an election (what forms to use, what information to supply, etc.). Whereas a substantive regulation deals with whether the taxpayer qualifies to make the election. As the disputed regulation fits the latter case, it must be called substantive. Thus, we must decide whether Code § 2032A(d)(1) authorizes only procedural regulations or whether substantive, as well as procedural, rules may be promulgated under it.

First, "manner" is defined as: "A way, mode, method of doing anything, or mode of proceeding...." Black's Law Dictionary 868 (Special Deluxe 5th ed. 1979); *see also In re Municipal Authority of Upper St. Clair, Allegheny County*, 408 Pa. 464, 184 A.2d 695, 699 (1962) ("The phrase 'in the manner' appearing in subsection (s) merely indicates that *procedural* rules set forth in the code of the local municipality are to be followed, but does not dictate that the *substantive* law governing the local municipality must be controlling." (emphasis added)). This definition would suggest a narrower reading of the phrase "in such manner" than the Defendant argues it should have. To prescribe the "manner" in which something is to be done is to prescribe its "procedure," not its substance. *See In re Municipal Authority*, 184 A.2d at 699. We view the requirements found in Regulation § 20.2032A–8(a)(2) to be substantive and not procedural.

The view that Congress intended to delegate only procedural rule making power to the Secretary in § 2032A(d)(1) is supported by the fact that Congress has already put many restrictions on the "substance" of the special use valuation election. Congress has determined that:

> In order to qualify for special use valuation, five conditions must be met: (1) the decedent must have been a citizen or resident of the United States; (2) the property, the value of which must exceed certain percentages of decedent's gross and adjusted estate, must be located in the United States; (3) the property must pass to a qualified heir, who must be a member of the decedent's family; (4) the decedent or a member of decedent's family must materially participate in the operation of the farm or business in 5 of the 8 years preceding decedent's death; and (5) the property must have been used for a qualified use by the decedent or a member of decedent's family at the date of decedent's death.

*Schuneman*, 783 F.2d at 697–98.

Thus, Congress has pervasively regulated the substance of the election. This leads us to the conclusion that Congress has left a more limited scope of regulation to the Secretary than Defendant has argued for. Given Congress' thorough requirements for election, it is more reasonable to presume that what Congress left for the Secretary was the prescription of the "procedure" for making the election when Congress used the words "in such manner as the Secretary shall by regulations prescribe."

This position is supported by the Secretary's own regulations. The subsection immediately following the disputed subsection, 26 C.F.R. § 20.2032A–8(a)(3), is the subsection entitled "Time and *manner* of making election." (Emphasis added.) This subsection reads: "An election under this section is made by attaching to a timely filed estate tax return the agreement described in paragraph (c)(1) of this section and a notice of election which contains the following information...." We believe that the Secretary has drawn a clear distinction between substantive and procedural regulations with respect to an election under Code § 2032A. Subsection (a)(3) is such a procedural regulation as it prescribes the "manner" (the Secretary's word, not ours) in which an election is to be made. This is consistent with—and in furtherance of—Congress' delegation of power to the Secretary to prescribe the "manner" in which the election is to be made. Subsection (a)(2), on the other hand, clearly adds a substantive provision concerning the election and it, therefore, goes beyond the statutory authority granted in Code § 2032A(d)(1) to prescribe the "manner" in which an election is to be made.

A similar matter has been heard by the Tax Court in *Estate of Pullin v. Commissioner,* 84 T.C. 789 (1985). In *Pullin,* the Tax Court held Treasury Regulation § 20.2032A–8(c)(2) invalid as the regulation "imposed an additional condition on the election which is not supported by statutory authority." *Id.* at 796. Decedent was a tenant in common with no right of survivorship in farm property with others who were not his heirs or devisees. The estate elected the special use valuation of the farm property under Code § 2032A, but the agreements required by Code § 2032A(d)(2) [2] were not signed by the surviving tenants in common as required by Treasury Regulation § 20.2032A–8(c)(2). The IRS disallowed the special use valuation election on this basis. The Tax Court determined that Regulation § 20.2032A–8(c)(2) was an interpretive regulation. In construing the delegation of authority in Code § 2032A(d)(1), the Tax Court found that the words "in such manner" extended only to the procedure of making the election and did not give the Secretary authority to prescribe regulations as to the contents of the agreement. *Id.* at 795–96. Thus, consistent with our finding in the instant case, the Tax Court found that § 2032A(d)(1) granted rule making authority only with respect to procedure and not substance.

Therefore, we find that Treasury Regulation § 20.2032A–8(a)(2) is an *interpretive regulation.* As such, it must be said to have been promulgated under the Secretary's general rule making power under Code § 7805(a). "Accordingly, 'we owe the interpretation less deference than a regulation issued under a specific grant of authority....'" *Vogel Fertilizer,* 455 U.S. at 24, 102 S.Ct. at 827 (quoting *Rowan,* 452 U.S. at 253, 101 S.Ct. at 2292). Additionally, in *Vogel Fertilizer,* the Supreme Court held that where Congress had defined a term in the Code with "considerable specificity," the Secretary's "authority is conse-

quently more circumscribed than would be the case if Congress had used" a more general term. *Vogel Fertilizer,* 455 U.S. at 24, 102 S.Ct. at 827. Likewise, in the instant case, where Congress has enunciated detailed substantive provisions for the special use valuation election, the Secretary's authority is narrower than had Congress not been so specific with the substantive election requirements.

### IV

■ Having found the regulation to have been promulgated under the general rule making power of Code § 7805(a), we are still left with the issue whether the regulation represents a valid exercise of that power.

First, we consider whether the regulation harmonizes with the statutory language. *See National Muffler Dealers Association, Inc. v. United States,* 440 U.S. 472, 477, 99 S.Ct. 1304, 1307, 59 L.Ed.2d 519 (1979); *Vogel Fertilizer,* 455 U.S. at 25, 102 S.Ct. at 827. The language of Code § 2032A(b)(1)(B), quoted above, cannot be said to be ambiguous with respect to the 25% requirement which the regulation imposes. Such requirement simply does not appear in the statute, nor can it be reasonably inferred that Congress was impliedly imposing such requirement. Thus, the regulation clearly imposes an additional, substantive requirement not authorized by the statute. The Supreme Court has held that a revenue ruling cannot narrow the scope of a statute when Congress has intended otherwise. *Neuberger v. Commissioner,* 311 U.S. 83, 89, 61 S.Ct. 97, 101, 85 L.Ed. 58 (1940). We believe here Congress has intended otherwise.

As the Eighth Circuit stated in a similar case, *Conway County Farmers Association v. United States,* 588 F.2d 592 (8th Cir.1978): "Determination that the language of the statute itself imposes no quantitative requirement may be viewed as

---

2. "The agreement referred to in this paragraph is a written agreement signed by each person in being who has an interest (whether or not in possession) in any property designated in such agreement consenting to the application of sub-

section (c) with respect to such property." 26 U.S.C. § 2032A(d)(2). Basically, subsection (c) deals with recapture in case the qualified use ceases. *See* 26 U.S.C. § 2032A(c).

putting an end to [the] inquiry. The statutory language appears unambiguous. Nonetheless, an illumination of congressional intent may ... be gleaned from legislative history." Hence, we look to whether the regulation harmonizes with the statute's origin and purpose. *Vogel Fertilizer,* 455 U.S. at 26, 102 S.Ct. at 828. We undertake this analysis of the origin and purpose of the statute with the following admonition from the Supreme Court in mind: "This Court has firmly rejected the suggestion that a regulation is to be sustained simply because it is not 'technically inconsistent' with the statutory language, when that regulation is fundamentally at odds with the manifest congressional design." *Vogel Fertilizer,* 455 U.S. at 26, 102 S.Ct. at 828.

As we have pointed out, the purpose of § 2032A was to encourage the continued operation of the family farm by permitting a special use valuation instead of a highest and best use valuation. But, there is a *quid pro quo* for the privilege of electing this special use valuation. Congress has attached stringent requirements to the decision to elect under the section. And, it is clear from the legislative history of the section that Congress went as far as it wanted to go in the statutory language in limiting the availability of the election.

Congress has expressed concern that the IRS is interpreting § 2032A in a more restrictive manner than contemplated by Congress. *See Estate of Davis v. Commissioner,* 86 T.C. 1156, 1164 (1986). United States Senator Alan J. Dixon of Illinois noted the tension between Congress' purpose in enacting § 2032A and the IRS administrative policy under that section in a Senate floor amendment in which he proposed the perfection provision contained in Code § 2032A(d)(3):

Congress wants to continue the family farm and small family-owned enterprises. Congress does not want the death of the owner of a family farm or a small family-operated business to force the sale of

that farm or business if the family wants to stay in farming or the small business. The idea was to not permit the Federal estate tax to destroy farms or small businesses.

There seems to be people at the IRS, however, who are not interested in preserving family farms and small business, and who want to use the slightest technicality to prevent an estate from being valued under the provisions of section 2032A.

130 Cong.Rec. S4318 (1984).

Further, the Senate Report accompanying the Economic Recovery Act of 1981, Pub.L. No. 97–34, 95 Stat. 306 (1981), stated that although extensive relief had been provided to numerous family farms and businesses,

a number of technical requirements of the current use valuation provision have resulted in incomplete relief being received by the owners of many family farms and other businesses for which the committee wished to provide. For these reasons, the committee has provided for a number of changes to the current use valuation provision to assist further in the preservation of family owned and operated farms and other businesses.

S.Rep. No. 144, 97th Cong., 1st Sess. 133, *reprinted in* 1981 U.S. Code Cong. & Ad. News 105, 233.[3]

Clearly, Congress wished to have broad application of § 2032A. The disputed regulation, by narrowing the scope of § 2032A's applicability, is simply inconsistent with this congressional intent.

We have been presented with no legislative history contrary to that just expressed. Further, in *Estate of Davis v. Commissioner,* 86 T.C. 1156 (1986), the Tax Court invalidated a provision of the very regulation involved here. Addressing the question whether an estate qualified for special use valuation under § 2032A involving succession to qualified heirs, the court held:

---

**3.** We note that Senator Dixon's comments (1984) were made well after the changes made by the Economic Recovery Act (1981) broadening the scope of § 2032A. Thus, even after

Congress had provided for wider coverage of the Act, the Secretary continued to thwart congressional intent by interpreting the section narrowly.

Neither the statute nor the legislative history requires that all successive beneficiaries be qualified heirs. However, the Secretary has added this requirement in section 20.2032A–8(a)(2), Estate Tax Regs.

\*     \*     \*     \*     \*     \*

[W]e are satisfied that when respondent's regulation is applied to the facts of this particular case, it ... thwarts the obvious purpose of Congress in the enactment of section 2032A....

*Estate of Davis,* 86 T.C. at 1166–67. Similarly, in the instant case, the regulation added a requirement not found in the underlying statute. As *Estate of Davis* concerned the exact same subsection (§ 20.-2032A–8(a)(2)) as that at issue here, and as it was decided by a court well versed in the tax laws and well in tune with the general intent of Congress concerning the interpretation of the tax laws, we consider that case very persuasive authority for a similar holding here.

Thus, we find that not only does the regulation fail to harmonize with the statutory language, but it also fails to harmonize with the origin and purpose of the statute.

### V

*Ergo,* we find the regulation, as applied to the facts before us, inconsistent with the underlying statute and to that extent it is invalid. Consequently, Plaintiffs' motion for summary judgment is ALLOWED. Conversely, the Government's motion for summary judgment is DENIED. Plaintiffs are entitled to a judgment of $17,795.60 plus interest as provided by law and as prayed in Plaintiffs' complaint.

IT IS SO ORDERED.

Case CLOSED.