GETTYSBURG NATIONAL
BANK, Plaintiff,

v.

UNITED STATES of America,
Defendant.

Civ. A. No. 1:CV–90–1607.

United States District Court,
M.D. Pennsylvania.

Nov. 19, 1992.

Neal S. West, Stephen A. Moore, Mark M. Van Blargan, McNees, Wallace and Nurick, Harrisburg, Pa., for plaintiff.

James J. West, U.S. Atty., Martin C. Carlson, Asst. U.S. Atty., Harrisburg, Pa., Harry J. Giacometti, Gregory D. Stefan, U.S. Dept. of Justice, Trial Attys., Tax Div., Washington, D.C., for defendant.

## MEMORANDUM

RAMBO, Chief Judge.

Before the court is Plaintiff's request for a determination of the validity of its partial § 2032A election for special use valuation. The issue has been fully briefed and the matter is now ripe for disposition.

*Background*[1]

Upon their father's death, John Lott ("John") and M. Sheila Lott Gantz ("Sheila") were bequeathed all of Bear Mountain Orchards, and one half of three other farms—Piney Mountain Orchards, Flicker Hill Orchards, and Emory Tuckey Tract. The other half interest of these three farms was left to their siblings, Robert C. Lott ("Robert, Jr.") and Elizabeth Anne Stafford ("Anne").

An estate is usually valued, for tax purposes, at its highest and best use. *See Estate of Cowser v. Commissioner,* 736 F.2d 1168, 1170 (7th Cir.1984). However, pursuant to 26 U.S.C. § 2032A, certain qualified property which is used in a family business or farm may be valued at a lower rate for estate tax purposes to encourage continued operation of the family endeavor. *Id.* Certain requirements[2] for this special

---

1. The facts of the captioned case have been more fully set forth in this court's memorandum of July 17, 1992.

2. The nine requirements are: (1) the decedent must have been a United States resident or citizen at the time of death; § 2032(a)(1)(A); (2) the executor must file a written agreement signed by each person who has an interest in

valuation must be met including securing the signatures of certain individuals. Plaintiff did not obtain signatures from all four siblings, but only from John and Sheila. Subsequently, Plaintiff sought to elect special use valuation of the property in which the two had an interest.

On July 17, 1992, this court granted additional time for Plaintiff to obtain the signatures of the other two siblings and perfect its special use election. A Joint Status Report of the parties, submitted October 21, 1992, informed this court that this perfection had not occurred within the requisite time period since only the additional signature of Anne had been obtained.

The question currently before the court is whether signatures of the three children are sufficient to invoke partial election of the special use valuation.

*Discussion*

I. Required Signatures

■ To ensure that beneficiaries of the special use valuation do not receive a windfall by immediately selling the elected property for non-qualified purposes, § 2032A permits the Internal Revenue Service ("IRS") to recapture the benefit received from the favorable tax treatment if qualified use ends within ten years of the election. To protect parties from this potential liability, the statute further provides that certain parties consent in writing to this recapture scheme.

To elect special use valuation, § 2032A(a)(1)(B), in conjunction with § 2032A(d)(2), requires the estate's executor to file a written agreement signed by each person who has an interest in the designated property. One case has concluded that " 'property designated in such agreement' means the interest that the decedent owned which is *subject to the estate tax and the special use valuation.*" *Pul-*

*lin v. Commissioner,* 84 T.C. 789, 793–794 (1985) (emphasis added).

This interpretation comports with the legislative history of § 2032A. The Joint Committee on Taxation explained:

> One of the requirements for making a valid election is the filing with the estate tax return a written agreement signed by each person in being who has an interest (whether or not in possession) *in any qualified real property with respect to which the use valuation is elected.* This agreement must evidence the consent of each of these parties to the application of the recapture tax provisions to the property.

*Pullin,* 84 T.C. at 797 (citing Tax Reform Act of 1976, Pub.L. 94–455, 90 Stat. 1520; Staff of the Joint Committee on Taxation, *General Explanation of the Tax Reform Act of 1976,* 1976–3 C.B. 554–555 (Vol. 2)). Thus, case law and legislative history suggest that only those who have an interest in that property to which election for special use valuation is being made must consent to recapture liability.

This interpretation of the language best corresponds with the purpose of the statute. The consent provision of § 2032A ensures that liability will not be imposed on those who choose not to agree to the recapture lien. Furthermore, since partial election for special use valuation is permitted (Treas.Reg. § 20.2032A–8(a)(2)), and since a lien may attach to the interest of one co-tenant and not to that of the others, *Koubek v. Tenos,* 343 Pa. 409, 22 A.2d 740, 742 (1941), a partial election of a co-tenancy would not impose liability on non-consenting co-tenants. *See also* Tech.Adv.Mem. 8926002 (March 2, 1989) (signature of tenant-in-common unnecessary for special valuation since property could be apportioned to satisfy partial lien).

---

the property, § 2032A(a)(1)(B) and 2032A(d)(2); (3) the property must be located in the United States, § 2032A(b)(1); (4) the property must have been used for a qualified use at the time of death, § 2032A(b)(1); (5) the property must have passed to a qualified heir, § 2032A(b)(1); (6) the qualified use of the real property must have occurred for five of the previous eight years § 2032A(b)(1)(C); (7) fifty percent or

more of the adjusted value of the gross estate must consist of qualified real and personal property together, § 2032A(b)(1)(A); (8) twenty five percent or more of the adjusted value of the gross estate must consist of qualified real property, § 2032A(b)(1)(C); and (9) the heirs must continue use of the qualified property for at least ten years after the decedent's death, § 2032A(c).

The court in *Pullin* confronted a similar situation to the one at bar: the plaintiff's non-heir co-tenants refused to sign the consent agreement so subsequently the IRS rejected the plaintiff's election for special use valuation. However, the court determined that the co-tenants' signatures were unnecessary as their interest in the property was unaffected by the decedent's bequest to the plaintiff. *Pullin*, 84 T.C. at 794.

The *Pullin* co-tenants, in contrast to the co-tenants in the case at bar, did not receive their interest in the property from the decedent, and so they were not qualified heirs. However, this difference does not preclude applicability of the *Pullin* analysis. There is no basis for differentiating between election of only a part of a co-tenancy because only a parcel has been passed by a decedent to qualified heirs, *or* making only a partial election because only part of a co-tenancy is owned by signatories.

Interpreting § 2032A to permit partial election with signatures by only some qualifying heirs conflicts with regulatory language which requires that *all* qualified heirs sign the consent agreement. Treasury regulation § 20.2032A–8(c)(1) mandates that qualified heirs consent to the liability and statutory section § 2032A(e)(1) defines a qualified heir as one to whom qualified property passes from the decedent. Under the regulation, qualified heirs must consent even if they are not electing special valuation nor benefiting from such tax treatment.

This regulation adds a condition to those enumerated in the Code by requiring the consent of individuals who need not otherwise sign the agreement. *Pullin v. Commissioner*, 84 T.C. 789, 798 (1985) noted a similar disparity between § 2032A(d)(2)— requiring parties with an interest in the designated property to consent to recapture liability—and the applicable Treasury regulation, § 20.2032A–8(c)(2)[3]—requiring,

among others, co-tenants to consent to the recapture liability. The Code would not, but the regulations would require the *Pullin* co-tenants to sign the requisite agreement. The *Pullin* court reasoned that regulations are interpretative, not legislative, and therefore due less deference and concluded that the regulation by imposing an additional requirement than those set forth in the statutes was invalid. *Pullin*, 84 T.C. at 796–97.

Similarly, in the captioned action, the Treasury regulation imposing an additional requirement—the consent of all qualified heirs—to that of the statute—requiring only the consent of parties with an interest in the designated property—must be deemed invalid. Therefore, Plaintiff need not satisfy either of the two invalid regulatory requirements—either that all qualified heirs or that all co-tenants sign the agreement.

Consequently, Plaintiff is permitted partial election of special use valuation without signatures of all co-tenants as long as signatures are obtained from those individuals who have an interest in that property to which election is made (and as long as other requirements, as described below, are fulfilled).

## II. Twenty Five Percent Requirement

For proper election of special use valuation, § 2032A(b)(1)(B) requires that the adjusted value of the qualified property comprise at least twenty five percent of the adjusted value of the gross estate. An individual need not elect all qualified property for special treatment, but instead, may make a partial election pursuant to Treas. Reg. § 20.2032A–8(a)(2). This regulation provides than an election:

> need not include all real property included in an estate which is eligible for special use valuation, but sufficient property to satisfy the threshold requirements of § 2032A(b)(1)(B) must be specially valued under the election. If joint or undivided

---

**3.** Treasury Regulation 20.2032A–8(c)(2) provides:

An interest in property is an interest which, as of the date of the decedent's death, can be asserted under applicable local law so as to affect the disposition of the specially valued property by the estate.

interests (e.g. interests as joint tenants or tenants in common) in the same property are received from a decedent by qualified heirs, an election with respect to one heir's joint or undivided interest need not include any other heir's interest in the same property if the electing heir's interest plus other property to be specially valued satisfy the requirements of section 2032A(b)(1)(B).

This regulation requires that at least ·25% of the adjusted value of the gross estate be *elected*, not merely be *qualified*. The court in *Miller v. United States*, 680 F.Supp. 1269 (C.D.Ill.1988), criticized the disparity ·between the Code and the regulations, and concluded that. the latter were invalid. In *Miller*, the plaintiff met the Code but not the regulation requirements. That is, at least twenty five percent of the gross estate was qualified use property, but the election was made on less than. this twenty five percent. The court held that the treasury regulation was invalid as setting forth an additional requirement, not set forth in the statute, to qualify for special use valuation. *Id.* at 1275.

Nonetheless, *Miller* should not be read as urging invalidation of the regulation's authorization of partial election; the court allowed the plaintiff's motion for summary judgment, thus permitting the plaintiff to partially elect special use valuation.

Defendant asserts that *Miller* wrongly invalidated the Treasury regulation and that Plaintiff must *elect* special use valuation of at least twenty five percent of the adjusted value of the gross estate. Defendant's May 22, 1992 brief at 8. Plaintiff's argue that *Miller* must be followed and that the elected portion of the property need not meet the twenty five percent limit. Plaintiff's May 4, 1992 brief at 39.

However, this dispute between the parties is irrelevant, since even assuming *arguendo* that both the Code and the regulation requirements must be met, that is, assuming that both the qualified and the elected property must be at least twenty

five percent of the gross estate, Plaintiff has conformed to both. As Plaintiff points out, even without Anne's signature, the interest held by John and Sheila is sufficiently large to permit a partial election of special use valuation.

In the captioned case, Defendant maintains that the adjusted value of the gross estate is $1,184,304. Defendant's May 22, 1992 brief at 9, n. 2. Plaintiff asserts that the adjusted value of the gross estate is $1,304,961. Plaintiff's May 4, 1992 brief at 38. The qualifying properties' adjusted values are the following:

| | |
|---|---|
| Bear Mountain Orchards | $156,500 |
| Piney Mountain Orchards | $195,000 |
| Flicker Hill Orchards | $153,000 |
| Emory Tuckey Tract | $125,000 |

The total adjusted value of these properties is $629,500.

At the time of this court's prior ruling, only two signatures had been obtained. Therefore, Plaintiff only elected the special use value on Bear Mountain Orchards, which John and Sheila owned completely, and fifty percent of the remaining properties, for which the two held a fifty percent interest. Therefore, Plaintiff's initial election included the following adjusted values:

| | |
|---|---|
| Bear Mountain Orchards | $156,500 |
| Piney Mountain Orchards | $ 96,500 |
| Flicker Hill Orchards | $ 76,500 |
| Emory Tuckey Tract | $ 62,500 |

The total of these values is $393,000 [4] which is 30.12% or 33.18% of the value of the gross estate, depending on whether Defendant's or Plaintiff's gross estate value is used. Either figure is greater than the requisite twenty five percent figure for *election* set forth in the *regulations.*

With the third signature of Anne, the elected property would be one hundred percent of Bear Mountain Orchards, and seventy five percent of the remaining three farms. The adjusted values for such an election would be the following:

| | |
|---|---|
| Bear Mountain Orchards | $156,500 |
| Piney Mountain Orchards | $146,250 |
| Flicker Hill Orchards | $114,750 |
| Emory Tuckey Tract | $101,250 |

---

4. Plaintiff claims that this figure is $398,000. Plaintiff's May 4, 1992 brief at 40. However, it appears that Plaintiff computed its figure with the Emory Tuckey Tract valued at $135,000, rather than its correct adjusted value of $125,-000:

These figures add to $518,750 which is 39.75% or 43.80% of the adjusted value of the gross estate, again, depending on whose figures are used for adjusted value of the gross estate. Again, these figures satisfy both the twenty five percent qualification requirement of the Code, and the twenty five percent election requirement of the regulations.

These figures demonstrate that, regardless of whether or not Anne's share is included in the calculation, that property to which an election has been made fulfills the regulation and Code requirements.

Using either Plaintiff's or Defendant's figures for adjusted value of the gross estate, and regardless of the additional signature of Anne, the requirements of both the Code and the regulations are met for the partial election of special use valuation.